BOUND BROOK ASSOCIATION ET AL. *v.*
CITY OF NORWALK ET AL.
(12209)
(12212)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued December 12, 1985—decision released February 18, 1986

*James V. Minor,* deputy corporation counsel, for the appellant (named defendant).

*Paul L. Blawie,* with whom, on the brief, was *Karen Reynolds,* for the appellant (defendant William R. Guarnieri).

*Alan R. Spirer* and *Robert M. Davidson,* with whom was *Karan Spirer,* for the appellees (plaintiffs).

*Philip M. Block* filed a brief as amicus curiae.

PETERS, C. J. The principal issue on this appeal is whether the defendants, the city of Norwalk (hereinafter Norwalk), and William R. Guarnieri, the former chief building inspector for Norwalk, fraudulently concealed the existence of a cause of action so as to toll the running of a statute of limitations. The plaintiffs, owners and former owners of houses in the Bound Brook Estates subdivision in Norwalk, commenced a suit against the defendants[1] by complaint dated September 19, 1978. In that complaint, the plaintiffs alleged that the defendants were liable for negligence, nuisance, negligent nuisance, and fraudulent and reckless misrepresentations in connection with the construction of houses purchased by the plaintiffs. In order to avoid the defendants' special defenses that the plaintiffs' cause of action was time-barred, the plaintiffs affirmatively pleaded, pursuant to General Statutes § 52-595,[2] that the defendants had "fraudulently concealed from the plaintiffs [the] existence of their cause of action." Following a lengthy trial, the defendants unsuccessfully moved for directed verdicts in their favor. Subsequently, the jury returned verdicts for the plaintiffs against Norwalk and Guarnieri on all counts,[3]

---

[1] The plaintiffs are owners or former owners of fifty-nine houses in the subdivision. In this action, they joined as defendants Bound Brook Estates, Inc., the development company; Raymond Wennik, the president of Bound Brook Estates; Harry E. Bryan, the design engineer; Louis J. Gardella, Inc., the pile driver; the city of Norwalk; and William R. Guarnieri, the Norwalk building inspector. Bryan died prior to trial and his estate defaulted in this action.

[2] General Statutes § 52-595 provides: "FRAUDULENT CONCEALMENT OF CAUSE OF ACTION. If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[3] Verdicts were also rendered against all but one of the other defendants. Bound Brook Estates, Inc., and Raymond Wennik were found liable by the jury and subsequently reached an agreement with the plaintiffs,

finding that, although the action had been brought more than three years from the acts and omissions in question, the statute of limitations had been tolled by fraudulent concealment on the part of the defendants.[4] Compensatory damages of approximately $2.3 million were awarded to the plaintiffs. Claiming that there was insufficient evidence to support the verdicts, the defendants moved the trial court to set aside the verdicts and to render judgment for the defendants notwithstanding the jury's verdicts. These motions were denied by the trial court on May 9, 1983, and the defendants have appealed. We find error.

The underlying facts are not in dispute. In 1965 and 1966, Bound Brook Estates, Inc. (hereinafter Bound Brook), received the approval of the city of Norwalk's planning commission and its common council to build a residential subdivision of 102 homes in Norwalk. Part of the land to be developed was a swamp composed of "soft, wet, marshy" soils. Bound Brook hired Harry E. Bryan, a well known professional engineer and surveyor of excellent reputation in the area, to plan the subdivision. Because of the soil conditions, Bryan determined that many of the houses would have to be built on pilings.

Subsequently, Raymond Wennik, president of Bound Brook, engineer Bryan, the defendant Guarnieri, and a deputy building inspector met to discuss the pending construction. At the time, Guarnieri had been chief building inspector of Norwalk for approximately eight

approved by the court, settling all claims against them for a total of $1.25 million. Only the defendant Louis J. Gardella, Inc., received a verdict in its favor. None of these defendants is a party to the present appeal.

[4] The plaintiffs have not challenged the jury's finding that the action was commenced more than three years from the acts and omissions in question and so would be barred by the statute of limitations absent fraudulent concealment by the defendants. In oral argument before this court, counsel for the plaintiffs conceded that the suit would be barred by the statute of limitations if fraudulent concealment were not established.

years. Although he had been involved in the residential construction business for a number of years, Guarnieri had no formal education in either engineering or architecture. Guarnieri discussed with Wennik and Bryan the building code[5] requirements for the construction of piling foundations, but indicated that neither he nor anyone on his staff had the professional engineering expertise necessary to evaluate or supervise the design and installation of the pilings.[6] Relying on provisions of the building code which permit the building inspector to accept reports and inspections by qualified experts outside the building department, Guarnieri arranged to have engineer Bryan assume responsibility for supervising the installation of the pilings and for certifying their compliance with the building code upon completion.

Following this meeting, Guarnieri issued building permits for the project, and construction began, with untreated wood pilings used to support many houses. In accordance with his regular practice, Guarnieri opened a separate file in the building department office for each house to be constructed. When completed, each file contained the building permit, with a notation on its face that the house had a wood pile foundation; the certificate of occupancy signed by Guarnieri, certifying substantial compliance with the building and zoning regulations of Norwalk; the inspection field sheet, recording periodic inspections of the house during the construction process; a plot plan; and a letter signed and sealed by engineer Bryan,[7] certifying that the pil-

---

[5] The city of Norwalk adopted the state building code in 1961, and this code was in effect throughout the period of construction of the subdivision.

[6] Two of the plaintiffs' expert witnesses testified that only a professional engineer or architect was capable of designing a piling system.

[7] The text of the letter of certification is as follows: "In accordance with Building Permit Applications filed in the Office of the Building Inspector, we certify to the following: The piling and the reinforced concrete foundation for house on lot ____ are in accordance with the plans filed with the

ing foundation had been constructed in accordance with both the building code and the piling plan on file in the building department. These files were open to public inspection. In mid-1969, construction on the houses ended and Guarnieri issued the final certificates of occupancy.

Shortly after construction had been completed, several houses in the Bound Brook subdivision developed serious settlement problems, necessitating the repiling of three of them by Bound Brook. Bound Brook neither applied for nor obtained building permits for this work. During the next few years, settlement problems of varying degrees developed in some additional houses, culminating in the collapse in 1976 of the ground floor of one house.

In 1977, Norwalk commissioned an engineering study of all the houses in the subdivision to determine the cause and extent of the problem and to attempt to find solutions. The study concluded that the wood pile foundations had been improperly designed, and that the use of untreated wood pilings had been inappropriate because of the fluctuating water table in the area. Following the release of this report, the plaintiffs filed the instant action.

On appeal from the judgment against them, Norwalk and Guarnieri both claim that the trial court erred in failing to direct verdicts in their favor, or to render judgment notwithstanding the verdicts, because the evidence produced at trial was insufficient to establish that they had fraudulently concealed from the plaintiffs the existence of a cause of action. Without proof of fraudulent concealment, the plaintiffs' cause of action was

Office of the Building Inspector of the City of Norwalk and are in accordance with the building code and ordinances of said City of Norwalk."

This letter was signed and sealed by Harry E. Bryan, registered professional engineer.

barred by the statute of limitations.[8] Because we find this claim of error to be well taken, we need not address the defendants' other assignments of error which challenge the trial court's rulings with regard to certain evidentiary matters, with regard to the instructions given to the jury, and with regard to sovereign immunity as a defense to Norwalk.[9]

To establish that the defendants had fraudulently concealed the existence of their cause of action and so had tolled the statute of limitations, the plaintiffs had the burden of proving that the defendants were aware of the facts necessary to establish this cause of action; *Puro* v. *Henry,* 188 Conn. 301, 311, 449 A.2d 176 (1982); and that they had intentionally concealed those facts from the plaintiffs.[10] *Zimmerer* v. *G. E. Company,* 126 F. Sup. 690, 693 (D. Conn. 1954); *Lippitt* v. *Ashley,* 89 Conn. 451, 480, 94 A. 995 (1915); see note, "Fraudulent Concealment of a Right of Action and the Statute of Limitations," 43 Harv. L. Rev. 471, 474 (1929); comment, "The Application of the Doctrine of Fraudulent Concealment to Modern Federal Trade

---

[8] General Statutes § 52-584 provides in relevant part: "LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

General Statutes § 52-577 provides: "ACTION FOUNDED UPON A TORT. No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[9] The plaintiffs, pursuant to Practice Book § 3012 (a), challenge the trial court's instruction that reliance is a necessary element of fraudulent concealment. Because of our holding that the plaintiffs failed to prove intent to conceal, we do not address this claim.

[10] We do not decide whether affirmative acts of concealment are always necessary to satisfy General Statutes § 52-595, as the trial court instructed the jury, or whether a failure to act would be sufficient. See comment, "The Application of the Doctrine of Fraudulent Concealment to Modern Federal Trade Conspiracy Cases," 14 Conn. L. Rev. 115 (1981).

Conspiracy Cases," 14 Conn. L. Rev. 115, 127–28 (1981). The defendants' actions must have been "directed to the very point of obtaining the delay [in filing the action] of which [they] afterward [seek] to take advantage by pleading the statute." *Lippitt* v. *Ashley,* supra, 480; *Zimmerer* v. *G. E. Company,* supra, 693. To meet this burden, it was not sufficient for the plaintiffs to prove merely that it was more likely than not that the defendants had concealed the cause of action. Instead, the plaintiffs had to prove fraudulent concealment by the more exacting standard of " 'clear, precise, and unequivocal' " evidence; *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 150, 163, 464 A.2d 18 (1983); *Puro* v. *Henry,* supra, 308; *Alaimo* v. *Royer,* 188 Conn. 36, 39, 448 A.2d 207 (1982).

The plaintiffs claim that they sustained this burden by establishing: (1) that Guarnieri, and through him Norwalk, issued the building permits and certificates of occupancy without first obtaining test results and affidavits required by the Building Code; (2) that a deputy building inspector signed misleading field inspection reports and filed them in the building department office; (3) that Guarnieri permitted the repiling of several houses without requiring building permits; and (4) that both Guarnieri and Norwalk later failed to investigate or to warn the plaintiffs or to revoke the certificates of occupancy when they became aware that settlement problems had developed in a number of houses. The defendants, on the other hand, claim that, even if these allegations were true, they do not establish that the defendants *intended to conceal* the cause of action from the plaintiffs. Since intent to conceal is an essential element of fraudulent concealment, they maintain that the plaintiffs have not sustained their burden of proof, and that the trial court erred in denying their motions for directed verdicts and for judgment notwithstanding the jury's verdicts.

Our review of a trial court's refusal to direct a verdict or to render judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; *Bleich* v. *Ortiz,* 196 Conn. 498, 501, 493 A.2d 236 (1985); giving particular weight to the "concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . ." *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141 (1965). The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. *Bleich* v. *Ortiz,* supra, 500–501; *Pinto* v. *Spigner,* 163 Conn. 191, 192–93, 302 A.2d 266 (1972); *Chanosky* v. *City Building Supply Co.,* supra, 643. After a thorough review of the extensive evidence presented in this case, we conclude that the plaintiffs failed as a matter of law to meet their heightened burden of proving that the defendants fraudulently concealed the existence of the cause of action. The jury's verdict, therefore, cannot stand.

Contrary to the plaintiffs' claim, the evidence that Guarnieri issued building permits and certificates of occupancy without first obtaining affidavits and test data concerning the piling foundations does not prove an intent to conceal the facts underlying the present cause of action. The evidence presented at trial established that Guarnieri's failure to require the test data was prompted by his reliance on the representations of a professional engineer that the piling foundations met the code specifications. Such reliance on outside experts is specifically authorized by the code, especially in situations such as the instant one in which the building inspector lacks the technical expertise to handle a particular project. See Connecticut Basic Building Code

(1966) §§ 108.3, 111.4, 129.11 and 129.13. There was no evidence whatsoever that Guarnieri knew when he issued the building permits and certificates of occupancy that the piling foundations as designed and constructed were deficient or that the untreated wood pilings used were inappropriate for the area, nor was there any evidence that he intended to conceal these deficiencies. His acceptance of the engineer's conclusory certification of compliance without first obtaining affidavits and detailed test data may arguably have constituted a violation of some provisions of the building code, as the plaintiffs maintain. This conduct does not, however, without more, support a reasonable finding that Guarnieri intended to conceal from the plaintiffs the deficiencies in the piling foundations in order to delay their discovery of the cause of action.

In like manner, evidence that a deputy building inspector incorrectly completed field inspection reports fails to prove an intent to conceal the cause of action. There was no evidence whatsoever that the deputy was aware of any deficiencies in the construction of the piling foundations at the time he signed the reports. On the contrary, the evidence established that he relied on the engineer's representations that the construction satisfied code specifications when he made his reports. The plaintiffs conceded in oral argument before this court that there was no evidence that the defendant Guarnieri knew that the inspection reports contained misleading statements. Without such knowledge, he could hardly have intended to conceal the rights the plaintiffs now claim to have. For similar reasons, even if the deputy's actions could be deemed attributable to Norwalk, a question we do not decide, the deputy's possible misconduct does not establish an intent to conceal on the part of Norwalk.

Similarly, the evidence that Guarnieri failed to require building permits for the repiling of several

houses by Bound Brook from 1969 to 1971[11] does not support a reasonable inference that Guarnieri thereby intended to conceal the cause of action. The repiling process was a major undertaking involving the removal of each house from its foundation, the demolition of the concrete slab upon which it had rested, the installation of new pilings with a large and noisy diesel or drop hammer, and the replacement of the houses on newly constructed foundations. In view of the intensely public nature of this process, we conclude that Guarnieri's failure to require building permits, even if arguably evidentiary of negligence in enforcing the building code, cannot reasonably be construed as evidentiary of an intent to conceal the problems with the houses and thus to delay the plaintiffs' discovery of their cause of action.

Finally, the plaintiffs failed to establish that Guarnieri's subsequent failure to warn the plaintiffs about settlement problems or to revoke certificates of occupancy after problems had developed was motivated by an intent to conceal from the plaintiffs the existence of a cause of action in order to delay their filing suit.[12] Although Guarnieri became aware sometime between 1969 and 1971 that several houses then required repiling, the record does not clearly establish that he had notice of continuing problems in the subdivision until the ground floor of one house collapsed in 1976. At that point, Guarnieri ordered an investigation and ultimately declared two houses unsafe for occupancy. In the absence of any clear evidence that he knew of the problems before that time, his failure

___

[11] It was established that the building code requires permits for this type of repiling, and that Bound Brook never applied for them. It is unclear from the evidence whether Guarnieri learned of the repiling before it had begun, or after it was already underway.

[12] In view of our finding that this evidence does not establish an intent to conceal, we need not decide whether Guarnieri had a duty to investigate or to warn, or whether an intentional failure to act in such circumstances would be sufficient to establish fraudulent concealment.

to act earlier could not reasonably support a finding that he intended to conceal a cause of action from the plaintiffs.[13]

In short, after reviewing all of the evidence presented, we find as a matter of law that the plaintiffs did not sustain their burden of proof, and that the jury could not reasonably and legally have concluded that the defendants had fraudulently concealed from the plaintiffs the existence of their cause of action. Consequently, the plaintiffs' action was barred by the statute of limitations, and the trial court erred in failing either to direct verdicts in favor of the defendants or to render judgment for the defendants notwithstanding the verdicts.

There is error, the judgment is set aside and the case is remanded to the trial court with instruction to render judgment in favor of the defendants Guarnieri and Norwalk.

In this opinion the other judges concurred.

---

[13] The plaintiffs also claim that Norwalk is liable because other members of the building department knew of problems in the subdivision and yet did nothing to correct them. We find no clear, unequivocal evidence that anyone in the building department was informed of continuing problems in the subdivision after the repiling of several of the houses from 1969 to 1971. It is not necessary for us to decide whether, even if they were aware of the problems, Norwalk had a duty to investigate or to warn because we find no evidence whatsoever that any alleged inaction was motivated by an intent to conceal from the plaintiffs the existence of the cause of action.

Instead, the only evidence on the issue indicated that, when Norwalk became aware of the seriousness of the problem in 1976, it held public hearings, authorized an engineering study which led to the filing of the instant action, and cooperated fully with the plaintiffs in their efforts to find solutions.